23 C.C.P.A.(Patents)

## In re GARREAU.

### Patent Appeal No. 3582.

Court of Customs and Patent Appeals.
Feb. 3, 1936.

Langner, Parry, Card & Langner, of Washington, D. C. (E. F. Wenderoth and John E. Lind, both of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, rejecting all of the claims of appellant's application for want of patentability in view of the prior art.

The rejected claims are three in number and read as follows:

"24. The method of burning powdered fuel which comprises mixing said powdered fuel with air, then forcing said air and fuel through a plurality of narrow passages through non-combustible and heat conductible material while gradually subjecting said fuel and air to increased heat to reach the ignition and combustion points.

"25. The method of burning powdered fuel which comprises mixing said powdered fuel with heated air, then forcing said air and fuel through narrow passages provided in a non-combustible and heat conductible material while gradually increasing the temperature of said fuel and air to the igniting point.

"26. The method of burning powdered fuel which comprises mixing said powdered fuel with heated air, then forcing said air and fuel through a pile of non-combustible and heat conductible blocks while the outlet surface of said blocks is maintained in incandescent state."

The references cited are: Bourne (Br.), 3,594, of 1868; Wolvin, 1,063,489, June 3, 1913; Batchelor, 1,296,906, March 11, 1919.

The alleged invention is described by the Board of Appeals in its decision as follows:

"The invention relates to a method of burning powdered fuel. In Figs. 1 to 10 applicant has illustrated an apparatus by which the method may be carried out. A mass of heat conducting blocks is placed in a chamber adjacent to a furnace or boiler. This mass may be heated to incandescence in any manner. The heat from the furnace will evidently keep it heated after the burning has begun. A mixture of powdered fuel and air is forced through the mass of blocks. The air and fuel are thoroughly commingled by the blocks and burn therein. The temperature of the blocks is lowest when the fuel enters so that as the mixture passes through the mass the temperature of it is gradually raised and is highest at the point where the mixture leaves the mass. At that point it is fully ignited and burns."

The patent to Batchelor discloses a furnace having a grate which divides the furnace into an upper and lower combustion chamber. A mass of porous material is placed upon the grate. A mixture of air and fuel is introduced into the lower chamber, is ignited by a pilot burner therein and burns. The partly consumed products of combustion pass up through the grate and the hot porous mass and are completely burned in the upper chamber.

In the patent to Wolvin there is disclosed a boiler furnace having a chamber at the front end and a series of baffles of checker brick work arranged at the rear end. A mixture of fine fuel and steam is forced into the chamber, where it burns to some extent, and then passes through the checker brick work where further combustion takes place.

The patent to Bourne discloses several forms of apparatus. That shown in figures 3 and 4 was specially referred to by the Board and discloses a steam boiler furnace with a combustion chamber separated into upper and lower parts by bars or a perforated arch which, the patent states, are composed of firebrick. The floor of the lower part of the chamber is filled with material which the patent states consists of pieces of firebrick or other intractable material. Between the said bars and the top of the firebrick in the bottom of the chamber there is a very considerable empty space in which no flames are indicated in the drawing, but flames are indicated in that part of the chamber over the said bars separating the chamber. With respect to the operation of the apparatus shown in said figure 3 the patent states:

" * * * In this boiler the air is heated by being brought down through a casing encircling the chimney and the boiler, and it is projected with the fuel through twyeres into a combustion chamber placed beneath the bars, which are of firebrick, and the coal dust ascending through them is burnt as before. This species of draught is one of those which I term an equivalent of the descending draught, as although the draught in reality ascends through the fire the action is the same as if it descended, since the coal dust mingled with air equally passes through the fire as in a descending draught it would necessarily do. A side draught in which the coal dust is carried sideways through or among hot bodies may it is obvious be easily arranged upon the same principle, and such a draught would also be equivalent to a descending draught. The coal dust is fed in by feeding rollers rotating slowly in hoppers as before, or by any other equivalent arrangement, and falling through slanted pipes before jets of steam, which should be superheated, it is carried with the air into the combustion chamber beneath the firebrick bars or perforated arch and finally ascends through the fire. In the combustion chamber pieces of firebrick or other intractable material may be laid, or pigeon hole passages may be built, but so formed as to let out the slag, which will flow out by a hole as before. * * *"

The Bourne patent discloses other forms of the invention whereby the fuel is fed directly on the top of the firebrick bars in the upper part of the chamber, and from there the products of combustion pass downward to the lower part of the chamber, and then upward through fire clay pipes into the boiler to generate steam.

With respect to the invention generally, the patent states:

"What I claim as new in this part of my Invention is the combination in common furnaces of the use of coal dust fuel with a descending draught, or its equivalent, in the form of a side or other draught so arranged that the dust is constrained to pass through the fire whether such fire, or incandescent mass answering the purpose of a fire, be formed of coal, or brick, or pumice stone, or other intractable material with or without coal, or of a mixture of all or any of these substances, and also of the use in furnaces of firebrick tiles disposed in an arch or otherwise, or of perforated fire-blocks or arches when combined with the use of coal dust, so that the flame and products of combustion, and also the slag, may descend through such openings or perforations made in a bed of intractable material capable of withstanding a very high degree of heat, whereby the dust which would otherwise pass into the flues and up the chimney is wholly consumed. The coal entering as dust on this system being in a state of minute subdivision and presenting a large surface to the air, with which moreover it is intimately mixed, it will explode to some extent like gunpowder, and the sudden explosion or combustion will generate a pressure at the point where the combustion takes place which will increase the intimacy of the contact and so favor combination. By this action, and also by the diffusion of the combustible particles, less air will be required to enter the furnace than is usually admitted to common furnaces burning the same quantity of fuel, since nearly the whole of the oxygen which is sent in will enter into combination and less fuel will suffice to generate a given quantity of steam since there will be less waste in heating air which merely passes through the fire without any part of it entering into combination, and which waste air amounts in common furnaces to as much, or nearly so, as the quantity really utilized."

With respect to the "incandescent mass" referred to in the patent, it is not very clear whether this was intended to include the intractable material in the bottom of the chamber shown in said figure 3 or was intended to include only such material which separates the chamber. The draw-

ing would indicate that the latter was intended for, as has been stated, no flames are indicated in the space between such material in the lower part of the chamber and the bars separating the chamber into two parts.

Inasmuch as it is our opinion that the claims here involved are not patentable in view of the reference Bourne, it is not necessary for us to consider the other references.

It is appellant's contention that in the Bourne construction the air and fuel pass through the firebrick in the lower part of the combustion chamber, are there intermingled, and that, to quote from the brief of counsel for appellant,

" * * * The firebrick located at the bottom of the combustion chamber merely slows up the passage of the mixture through the combustion space so as not to carry the fuel particles too swiftly through the fire. There is no gradual raising of the temperature of the fuel mixture as specifically called for in applicant's claims until the ignition point is reached. In the Bourne construction after the mixture of fuel and air passes through the firebrick, then as clearly shown in Figure 3, there is a space directly below the tiles of firebrick or perforated arches b where the mixture encounters nothing. In this space the mixture which has been heated by the heated air and the steam necessarily must cool to some extent and then above the perforated arches b the combustion itself takes place in the manner of an explosion.

"In applicant's method there is a gradual and continued raising of temperature until the ignition point. In Bourne's method there is no such gradual raising of temperature since the fuel is immediately heated by the superheated steam and is then cooled during its passage through the firebrick and cooled still more in the space directly below where the combustion takes place. * * *"

Accepting appellant's theory of the operation of the Bourne apparatus above described, that the firebrick in the lower part of his combustion chamber is not heated to incandescence, but serves to assist in the intermingling of the air and fuel and slow up the passage of the mixture through the combustion space, we nevertheless are of the opinion that said patent renders the claims involved herein unpatentable. Considering the firebrick bars dividing the combustion chamber as heated to incandescence, it is plain to us that as the fuel mixture reaches said bars it is gradually subject to increased heat to reach the ignition and combustion point, and fully anticipates appellant's claims. Even if the fuel mixture passing into the firebrick in the lower part of the combustion chamber is cooled therein, and is further cooled in the space immediately above said firebrick, as appellant claims, a claim which we think is untenable, it necessarily follows that when it passes through the upper incandescent firebrick there will be a gradual and continued raising of the temperature to the ignition point, as called for in the claims.

It will be observed that there is nothing in the claims before us limiting the application of the powdered fuel and air directly from the nozzles to the noncombustible and heat conductible material, and therefore the fact that Bourne forces the air and fuel mixture through the firebrick in the lower part of the combustion chamber before it is forced through the upper incandescent firebrick is immaterial.

It is true that Bourne shows that the air and fuel are heated before they pass through the lower firebrick, but appellant also contemplates the use of air heated before it reaches the noncombustible and heat conductible material. His specification states:

"The comburant air which brings the powdered coal through openings 3–4 could be heated before being introduced into the furnace."

Furthermore, it will be observed that claim 25 and also claim 26 before us contain the element of mixing powdered fuel with heated air before it is forced through the noncombustible and heat conductible material.

It is also true that the Bourne patent says nothing about the gradual heating of the fuel mixture as it passes through the incandescent firebrick, but neither does the specification of appellant.

The Board of Appeals no doubt was of the opinion that such gradual heating was inherent in appellant's process, and we are of the opinion that it is also inherent in the process carried out by the Bourne apparatus.

If we were not to accept appellant's theory that the firebrick in the lower part of the chamber of Bourne was not incandescent, and should hold that Bourne contemplated that it should be incandescent,

our conclusion would be the same for, in such case, the heating of the fuel mixture would gradually increase to the point of ignition while passing through said lower firebrick, and the absence of any showing of flames in Bourne's drawings immediately above the lower firebrick is merely an indication that appellant's theory that the lower firebrick is not incandescent is correct.

We think the Board of Appeals came to the correct conclusion, and its decision is affirmed.

Affirmed.